### First National Bank of Orange v. R. Sokolski et al.

Decided October 17, 1910.

**1.—Homestead—Purchase with Proceeds of Home in Another State.**

The fact that a husband gave to his wife the proceeds of a sale of their home in another State, and that the wife after the death of her husband invested such proceeds in a residence in this State, would not of itself be sufficient to invest the residence property in this State with such homestead character as would exempt it from sale for debts of the wife.

**2.—Homestead—Acquisition by Surviving Spouse—Dissolution of Family.**

The protection of the homestead from forced sale for debt does not continue after the family has ceased to exist, in a case where the homestead was acquired by a surviving spouse after the severance of the marriage relation. As to such person the right depends wholly upon the existence of a "family" within the meaning of that term as used in the Constitution.

**3.—Same—Head of Family—Pleading—Evidence—Variance.**

An answer that defendant's family consisted of herself and four of her own children, naming them, would not support proof that the family consisted of defendant and a grandchild.

**4.—Trial by Court—Improper Evidence—Reversible Error, When.**

When it affirmatively appears that the court, trying a case without a jury, considered and acted upon improper evidence, the admission of the evidence over objection would be reversible error.

**5.—Judgment—Proof Without Pleading.**

Facts proved but not pleaded, will not support a judgment.

**6.—Homestead—Family—Widow and Grandchild.**

Evidence considered as to the relationship of a widow and a grandchild nine years of age of whom the widow had had exclusive care and control from

its birth, and held sufficient to support a finding that the widow and grand-child constituted a family within the meaning of the Constitution exempting the homestead of a family from forced sale for debt.

**7.—Conversion—Pleading.**

In order to hold a third party liable for the conversion of property of a debtor, the creditor must show some title to or interest in the property alleged to have been converted. Pleading considered and held insufficient.

Appeal from the District Court of Orange County. Tried below before Hon. W. B. Powell.

*Geo. E. Holland* and *V. H. Stark,* for appellant.—Defendant's allegation and the evidence thereunder does not show that she was entitled to hold the property in controversy exempt as a homestead at the time of the levy of the writ of attachment thereon. Givens v. Hudson, 64 Texas, 471; Burns v. Jones, 37 Texas, 50; Towns v. Mathews, 17 S. E., 955; Bank v. Cooper, 56 Cal., 339; Ramey v. Allison, 64 Texas, 697; Cobb v. Collins, 111 S. W., 760; Bahn v. Starcke, 89 Texas, 207; Roots v. Robertson, 55 S. W., 308; Blum v. Gaines, 57 Texas, 123; Schneider v. Bray, 59 Texas, 668; Wilkins v. Briggs, 107 S. W., 140; Banking Co. v. Anderson, 44 S. W., 636; Phillips v. Price, 12 Texas Civ. App., 408.

To constitute a family within the meaning of the exemption laws, the head of the family must be legally or morally obligated to support other members, and such members must be dependent upon the head for such support. Roco v. Green, 50 Texas, 483; Whitehead v. Nickelson, 48 Texas, 517; Bosquett v. Hall, 9 L. R. A., 351; Carter v. Adams, 4 S. W., 36; Hill v. Franklin, 54 Miss., 632; Harbison v. Vaughn, 42 Ark., 539; Howard v. Raymers, 89 N. W., 1004.

The trial court should not admit or consider testimony not admissible under the pleadings in arriving at his judgment in the case. Ramey v. Allison, 64 Texas, 697.

There must be a legal or moral obligation on the part of the person to support a grandchild, and a corresponding dependency for support on the part of the grandchild, before such grandchild would become with such person a family of which the grandparent is the head within the meaning of the law on homestead exemption. Roco v. Green, 50 Texas, 483; Whitehead v. Nickelson, 48 Texas, 517; Mullins v. Lock, 8 Texas Civ. App., 138; Banking Co. v. Anderson, 44 S. W., 636.

A child whose parents are living and liable for its support does not become a member of the family of its grandparent who, for personal reasons, takes such child to raise, to the extent of thereby constituting with such grandparent a family entitling the grandparent as the head to homestead exemption. Phillips v. Price, 12 Texas Civ. App., 408; McMillan v. Hendricks, 46 S. W., 859; Carter v. Adams, 4 S. W., 36; Powers v. Sample, 16 So., 293; Betts v. Mills, 58 Pac., 957; Wilkens v. Briggs, 107 S. W., 140.

Parties are liable who by concert of action convert property into cash

and keep and secrete the money from the creditors of the owner of such property.

*Hart & Sholars,* for appellees.—Property once designated as a homestead and stamped with the exemption as required by the statutes, remains the homestead as long as occupied as such, and a surviving grandparent, who has the exclusive care, custody, training, support, maintenance and control of a grandchild, is entitled to the homestead exemption, being the head of a family, especially if the grandparent is then residing upon the old homestead occupied by her for many years with her own minor children. American Nat. Bank of Austin v. Cruger, 71 S. W., 784 (last of case and cases cited therein) ; Clark v. Goins, 23 S. W., 703.

When the husband and wife acquire a homestead and sell same and husband dies, leaving surviving children who are minors living with the wife, and leaving the identical money received by them in the possession of the survivor, and she invests this money in another home for herself and children, using, claiming and occupying it as a home for herself and children, no rights of creditors intervening between the sale of the first homestead and the purchase of the second, the second homestead is exempt from forced sale so long as the wife lives and elects to occupy same as a home, and is not subject to partition, not even among the surviving children. Constitution of Texas, art. XVI, sec. 52; Sayles' Annotated Statutes, art. 2395; Common Rules of Equity and Justice; Clements v. Maury, 110 S. W., 186.

REESE, Associate Justice.—The First National Bank of Orange instituted this suit against Mrs. R. Sokolski, widow, in the District Court to recover the amount of certain promissory notes aggregating over $3000, and at the same time sued out an attachment which it caused to be levied upon a certain house and lot in the town of Orange. Plaintiff also joined in the suit certain persons, children of Mrs. Sokolski, alleging they had conspired together and with Mrs. Sokolski for the purpose of defrauding plaintiff, and acting together and in concert had fraudulently converted a certain stock of goods belonging to Mrs. Sokolski into cash and had converted the proceeds, of which they were in possession.

Mrs. Sokolski resisted the attempt to foreclose the lien of the attachment, alleging that the property levied upon was her homestead.

The other defendants, as to the cause of action set up against them, denied and demurred generally and specially. The court sustained the exceptions and dismissed the case as to them.

The homestead claim of Mrs. Sokolski was sustained, and judgment rendered for the amount of the notes but dissolving the lien of the attachment. From the judgment plaintiff appeals.

The case was tried without a jury, and, at the request of plaintiff, the court prepared and filed conclusions of fact and law. None of the

conclusions of fact is attacked by either party and such conclusions, as to the issue presented by this appeal, are adopted by us as follows:

"3. That the property in dispute was acquired by the defendant R. Sokolski in two separate purchases. That at the time of its acquisition she was a widow with four minor children. That she immediately went upon said property with her said children and has continuously resided thereon until the present time, and was residing thereon at the time the writ of attachment was levied.

"4. That on said property is situated a two-story brick business house, the upper story of which is so arranged with rooms as to be suitable for a dwelling, and that the defendant R. Sokolski resided upstairs in said building with her said children ever since she bought it until said children left as hereinafter shown. And that the premises were used downstairs by her for business purposes. The occupation of same being continuous and open and conclusive of her intention to use the same as a home.

"5. That all of the children constituting the family, before the issuance and levy of the writ of attachment in this case, had reached their majority, had married and were living with their respective husbands and wives.

"6. That there was a grandchild living with the defendant R. Sokolski at the time of the issuance and levy of the writ of attachment, the grandchild being a daughter of a daughter of the defendant, who is married and residing in the city of New Orleans, Louisiana, with her husband who is also the father of this child, but this child had been raised by the defendant, its grandmother, and she had cared for it since its infancy, and the said child is still now living with the defendant on the property in controversy.

"7. That the defendant lived with her husband in Clay, Kentucky; that at that place they owned a homestead. That some time prior to her moving to Orange, Texas, they sold their homestead and her husband gave her the money therefor. That after this they moved to Evansville, Indiana, at which place they acquired no new home and at which place the husband died. That after the death of the husband the defendant moved to Orange, Texas, and some time after that purchased the property in controversy, she using in the purchase the money given to her from the sale of the homestead in Clay, Kentucky."

To the conclusions of the trial court in paragraph 6, with reference to the grandchild, we add the following as authorized by the undisputed evidence:

This grandchild is now about nine years old. She was born in her grandmother's house and has always made her home with her in the house now claimed as a homestead. The grandmother has always had the exclusive care and custody of this grandchild, and she has had the entire support of her, her nurture and education. The parents of the child have also been to a considerable extent "kept up" by the grandmother. The evidence does not disclose whether the parents of the child

have a home of their own. The child has occasionally visited them, but her home has been with her grandmother since her birth. It is not shown that the child's parents are not able to provide for her support, further than is shown by the testimony that the grandmother has "kept them up" ever since their marriage.

The trial court concluded that Mrs. Sokolski was the head of a family at the time of the levy of the attachment writ and that the property was exempt. These conclusions of law and the judgment based thereon are attacked by several assignments of error presenting the question of the sufficiency of any of the findings of fact to sustain the homestead claim. These embrace three legal propositions, each of which is urged in opposition to the claim of appellee.

The court finds generally that the property was exempt as a homestead, without any finding to indicate that such conclusion was based upon any one of the several grounds upon which the claim is made.

The facts found with respect to the sale of the homestead in Kentucky, and that the proceeds or part of the proceeds thereof were given by the former husband to his wife, appellee, and used by her in paying for the property in controversy, are not sufficient to invest this property with the character of homestead at the time of the levy of the writ of attachment unless appellee was then the head of a family within the meaning of the Constitution and laws exempting from sale for debt the homestead "of a family." It may be further said that no reference is made in the petition to this fact as constituting a ground for the claim. The evidence on this point is contradictory and not at all free from suspicion.

At the time appellee acquired this property and established her home upon it she was the head of a family consisting of herself and several minor children, but at the date of the levy of the attachment the family so constituted had ceased to exist by the marriage and coming of age of the several children, as found by the court. When a homestead is acquired during the existence of the marriage relation, upon the death of either spouse the homestead exemption is continued during the life of the survivor, although occupied by such survivor alone. But this continuance of the homestead protection after the "family" ceases to exist does not apply to a homestead acquired by the surviving spouse after the severance of the marriage relation. (Kessler v. Draub, 52 Texas, 579; Blum v. Gaines, 57 Texas, 123; Roots v. Robertson, 93 Texas, 365.) As to such person the right depends wholly upon the existence of a family, consisting of such person as head of the family and others standing towards him in such relation as to constitute the whole a family within the meaning of that term as used in the Constitution.

The children of appellee at the date of the levy not being constituents of such family, and she alone not constituting a family entitled to such homestead protection, the only remaining ground upon which her claim can be sustained is that based upon the presence, as a member of her household, of the grandchild.

As to this ground two objections are made by appellant:

First. That the evidence does not show that appellee and this grandchild constituted a family within the meaning of the law; and,

Second. If it does, under the pleadings of appellee this fact could not be considered.

As to this latter objection the question is further presented by an assignment of error to the ruling of the court in admitting evidence with regard to the grandchild, over objection that it was not authorized by the pleadings.

Upon these questions we will express our views briefly. The allegations of appellee's pleadings setting up the homestead exemption are as · follows:

"That at the time of the levy of said writ as aforesaid, said property was the homestead of this defendant, and was such for a long time prior thereto, for she says that she purchased a part of said lot on the 25th day of January, 1897, and the remainder thereof on the 29th day of May, 1901, and that at the time she purchased said property she was the head of a family consisting of herself and her four children, viz.: Etta Sokolski, Abe Sokolski, Annie Sokolski and Aaron Sokolski. That said property became the homestead of this defendant and her said family as soon as purchased by her, and was then worth not to exceed $5000 without reference to value of the improvements thereon. That this defendant upon purchasing said property immediately moved with her said family into the building erected thereon and has ever since lived in said building and upon said property and used and claimed the same for the purpose of a home of herself and her family, and also as a place to exercise her calling as the head of her family, being that of a retail merchant. That said defendant, R. Sokolski, with her family has ever since the purchase of said property continuously lived thereon as her homestead, using the same for the purpose of a home and as a place to exercise her said calling as the head of a family, and was so living thereon and so using, claiming and enjoying the same at the time the said writ of attachment was levied thereon, and has continuously since said levy of said writ so lived and used said property and is now so using the same for the purpose of a home for herself and family."

It will be noticed that there is no reference here to the grandchild as a constituent of the family. On the contrary, the explicit statement is made that the family, upon which the claim of homestead is based, consisted of appellee and her four children, who are named. It is stated that these persons constituted her family when she acquired the property, and that she immediately moved with her "said family" into the building. It is true that she further says that she has ever since continuously lived upon the property with her "family," and that she is now using the property for the purpose of a home for "her family," without naming the members thereof except in the first part of the plea, and appellee urges the point that she has not stated in her plea that at the time of the levy of the attachment her family consisted of herself

and her four named children, but has only used the terms "her family." We can not agree with appellee in this contention. Taking the plea as presented, it could not be understood by any one as containing a hint that the family, as existing .at the date of the levy, had any other constituents than those expressly named. The fact that she first speaks of her family, consisting of herself and four children, and immediately following, of "her said family," and afterwards, in that immediate connection, of "her family" merely, would not lead any person to conclude or to suspect that a different collection of persons was intended by the words "her family" than those expressly named. It was certainly not sufficient to give notice to appellant that it would have to meet a claim of homestead founded upon a family consisting of appellee and the grandchild. When the evidence with regard to the grandchild was offered, appellant objected to it on this ground, which objection was overruled and proper exception taken. Although the case was tried by the court, it is expressly found by the court that this evidence was considered, and there is strong reason to conclude that it formed the sole basis of his judgment. This objection should have been sustained.

It may further be said that this fact not having been pleaded could not form the basis of a judgment, upon the familiar principle that facts proven but not pleaded will not support a judgment.

But if properly pleaded, would the facts shown be sufficient to establish the homestead claim, that is, did appellee and the grandchild constitute a family within the meaning of that term as used in the Constitution?. Upon this point there is much conflict of authority, and we have had great difficulty in arriving at a conclusion. In numerous decisions of the Supreme Court attention has been called to the failure of the legislative branch of the Government to define the word family, leaving the matter to the courts, in the light of such precedents as might be found, to determine whether the facts of the particular case established the existence of a "family." In Roco v. Green, 52 Texas, 490, this definition is given:

"1.   It is one of social status, not contract.

"2.   Legal or moral obligation on the head to support the other members.

"3.   Corresponding state of dependence on the part of the other members for this support."

It is urged by appellant with much force that appellee was under no obligation, legal or moral, for the support of this grandchild, and that there was no corresponding state of dependence for support. The contention can only find basis in the fact that the child's parents, who are both legally and morally bound to support her, are not shown to be able and willing to furnish her a home and support. The evidence on this point is not as full and satisfactory as it should be.

It is said by Justice Key in American National Bank v. Cruger, 31 Texas Civ. App., 17 (71 S. W., 784), commenting upon the case of Roco v. Green:

"Notwithstanding the test there prescribed, in the subsequent case of Wolfe v. Buckley, 52 Texas, 649, the same court, in an opinion prepared by the same judge, considered as a factor in determining the question of homestead the fact that the minor children were dependent upon Mrs. Buckley for moral training, as well as for partial support and maintenance. Of course, Miss Fannie Cruger originally was under no legal obligations to support and maintain or nurture her nephews and nieces; but having taken them from their former home twenty years before the controversy in this case arose, and having undertaken to rear, train and nurture them, and having contributed largely to their support and maintenance, undoubtedly there rested upon her a moral obligation to continue so to do as long as they were in a state of dependence; and the word 'dependence,' as here used, is not restricted to support and maintenance,—food and clothing. It is intended to include moral and mental training, and that care and nurture which would be prompted by the feelings of affection which the testimony indicates existed between this aunt and the children of her unfortunate sister."

Considering the relationship between appellee and this grandchild, and all of the facts as stated in this opinion, we are not inclined to hold that the trial court erred in concluding that appellee and this minor grandchild constituted a family within the meaning of the term in the Constitution exempting the homestead of a family from forced sale for debt. (Wolfe v. Buckley, 52 Texas, 641; Schneider v. Bray, 59 Texas, 668; Barry v. Hale, 2 Texas Civ. App., 668, 21 S. W., 783; Smith v. Wright, 13 Texas Civ. App., 480, 36 S. W., 324; Wade v. Jones, 61 Am. Dec., 584.)

There was no error in sustaining the exceptions of appellees to plaintiff's petition seeking relief against certain children of Mrs. Sokolski, who were sought to be charged with having conspired with her in secreting certain property of appellee, as set out in the eighth assignment of error, which is overruled.

All of the assignments of error have been examined and, except as indicated in this opinion, they are severally overruled.

It was error to admit the evidence as to the grandchild in the state of the pleadings of appellee and, in so far as the judgment is based upon such evidence, it is erroneous for the same reason. As we have indicated, none of the other grounds set out in support of the claim of homestead are tenable.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*