## HUTCHENRIDER et al. v. SMITH.
### (No. 6517.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 23, 1921. Rehearing Denied March 23, 1921.)

1. **Homestead** ⬦⬦18—**Property ·of unmarried daughter into which family moved after destruction of homestead held not a homestead.**

Where an unmarried woman, living with her parents and two sisters, purchased a house and lot adjoining the family homestead, and after the death of the mother and the destruction of the family home by fire the father and daughters moved into such house, and they were not dependent on any one member of the family as the head of the family, the daughters being self-supporting, and the father, if dependent on any, being dependent on all, the premises did not constitute a homestead.

2. **Homestead** ⬦⬦36—**Claimant must have been actually employed in business to give character of business homestead.**

In order to impress the character of a business homestead on property, the claimant must have been actually employed in a business there.

3. **Homestead** ⬦⬦36—**Rooming house owned by daughter held not father's business homestead.**

Where an unmarried daughter bought a house and lot adjoining her parents' homestead, took charge of it, rented the rooms in it, returned it for taxation and exercised all the rights of ownership over it, it was not the father's business homestead.

4. **Homestead.** ⬦⬦70—**Tearing down fences and using daughter's property with father's did not make it a homestead.**

Tearing down fences between the homestead of a family and adjoining property owned by an unmarried daughter and putting an automobile belonging to one or both places in a garage on one of the lots did not make the daughter's property a part of the homestead.

Error from District Court, McLennan County; H. M. Richey, Judge.

Suit by William Smith against Theresa Hutchenrider and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Allan V. McDonnell and J. D. Williamson, both of Waco, for plaintiffs in error.

Johnston & Hughes, of Waco, for defendant in error.

FLY, C. J. This is a suit by defendant in error to recover of Theresa, Rosa, and Edna Hutchenrider, three unmarried sisters, the sum of $6,390.82, alleged to· be due him for labor and material used in converting a 12-room house into a 20-room apartment building, and to foreclose a mechanic's and materialmen's lien on the premises as against the parties named and the Old Dominion Trust Company, which held deeds of trust on the property. The three women claimed that the property was their homestead, and that no written lien had been given by them for labor and material. The Old Dominion Trust Company answered that the ' Misses Hutchenrider had executed to it two deeds of trust, the two aggregating $8,500; that their loan was made only in case their mortgages were a first lien on the property; that it had never paid any money to the Hutchenriders, and had no lien on the property· except for expense incurred for examination of the title and preparation of papers for the loan. The only real contest in the case was as to the homestead character of the property. The cause was submitted on special issues, and on the answers of the jury thereto judgment was rendered in favor of Smith, as against the Misses Hutchenrider, for $6,390.82, with interest and with a foreclosure of the lien claimed by him on the premises as against all the parties.

[1] The facts were that in October, 1909, the father and mother of the three Misses Hutchenrider were living in their home on a 75-foot front lot in Waco, Tex., at No. 927 Washington street. They had lived on that lot since 1885 or 1886, claiming it as their homestead. The Misses Hutchenrider were members of the family living with their parents. In the month named in 1909, another lot was bought, and the vendee in the deed was Theresa Hutchenrider. The lot adjoined the homestead of the parents, and had on it an 11 or 12 room house. This house was at 1003 Washington street, and was used as a boarding house. The mother died on January 1, 1917, and about two months thereafter the house at No. 927 was destroyed by fire, and the father moved with his daughters into the house at 1003 Washington street. On June 18, 1918, the oral contract for enlarging that house was made with defendant in error by plaintiffs in error. The father at that time was 83 years old, was quite feeble, and engaged in no business, but was living with his daughters, who rented rooms in the house in controversy, and had been renting

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

rooms therein since 1909. They lived in the old homestead until it burned. The house at No. 1003 was rendered for taxation by Theresa Hutchenrider, who held a deed for the same, and she executed notes for the deferred payments. The old homestead was rendered for taxation by the father, as well as other property he owned. The house on lot 1003 was insured in the name of the Misses Hutchenrider, and the one on lot 927 in the name of the father, and he collected the insurance when his house burned. The Misses Hutchenrider executed the deeds of trust to the Old Dominion Trust Company, representing therein that the house and lot was not a homestead. The facts and circumstances were of sufficient force to justify the jury in finding that the house in controversy was never any part of the homestead, but was bought by Theresa Hutchenrider for a rooming house, and that her father never at any time had any interest in or exercised any control over the house and lot. The evidence showed the Misses Hutchenrider agreed to pay defendant in error the sum claimed by him for making the improvements, and that the work was done and material furnished, as agreed. The facts all tended to show that H. Hutchenrider never claimed the lot in controversy as part of his homestead, or ever exercised any control over it. The father was present at the trial, but did not testify. The Hutchenriders got the benefit of the labor and material of defendant in error and never paid for it, but seek to evade payment under a claim of homestead.

There was sufficient evidence upon which to base a finding that the lot conveyed to Theresa Hutchenrider was never any part of the homestead at No. 927 Washington street, and was never owned by the parents of the three women named in this suit, and consequently up to the time that the home at 927 was burned had not been impressed with the homestead character. It is, however, the contention of plaintiffs in error that when their father moved into 1003 with them a family was constituted thereby, and the homestead character became attached to the property. A number of authorities are cited, but they fail to sustain the proposition under the facts of this case. There can be no doubt that if Miss Theresa Hutchenrider went into the house in controversy, having with her her sisters and father, all of whom were dependent upon her and whom she was morally bound to support, and did support, she might have become the head of a family within the purview of the Constitution. But the evidence showed that the sisters were self-supporting, and that the father received, after the house burned, $3,000 in cash, and owned, not only his interest in the lot on which the house was burned, but other property beside. The jury found that no member or members of the four or five people who lived in the house were dependent on any one of them as a head of the aggregation for a support. Both Miss Edna and Miss Theresa swore that neither of them was the head of a family, and Miss Rose does not seem to have been accused of holding such a position, but was an employé in the Waco Public Library.

In Roco v. Green, 50 Tex. 483, it is held that the requisites of a family, under the homestead law, are:

"1. It is one of social status, not of mere contract. 2. Legal or moral obligation on the head to support the other members. 3. Corresponding state of dependence on the part of other members for their support."

If the evidence fully established the dependency of the father, upon whom did it rest? There were three girls in the family, all of them earning a living, and which was the head of the family? All of them claimed to contribute to the support of the father, and if dependent it was upon all of them, and all must have been the head of the family, which would be an absurdity. Miss Theresa transferred a one-third interest in the property to each of her sisters, although she swore that it belonged to her father's homestead.

This is not the case, as are the cases cited, where constituent members of a family have died off, leaving one or more members surviving on property, a homestead, but one where there is a failure to show that this property was ever a part of the original homestead, and it is sought to impress it with the homestead character by the fact that after the homestead house burned the surviving members of the family moved into a house owned by one of them. As held in Bank v. Sokolski, 62 Tex. Civ. App. 324, 131 S. W. 818:

"When a homestead is acquired during the existence of the marriage relation, upon the death of either spouse the homestead exemption is continued during the life of the survivor, although occupied by such survivor alone. But this continuance of the homestead protection after the 'family' ceases to exist does not apply to a homestead acquired by the surviving spouse after the severance of the marriage relation."

It certainly would not apply to property acquired by a single daughter of the family and sought to be made a homestead after removal from the original homestead.

[2] It is needless to further discuss the transformation of the lot in controversy into a homestead after the death of the mother and the destruction of the house at 927 by fire, for in the pleadings the property is claimed to be a part of the homestead of H. Hutchenrider. This claim is made in the face of the fact that the land in controversy was conveyed to Theresa Hutchenrider; that she alone executed notes for the purchase money; that she alone exercised control over

the property, rendering it for taxation and raising money on it. The father never at any time laid any claim to the land, and never lived on it until the home burned. The lot at 1003 Washington street was never used by H. Hutchenrider as a place of business. If he did any business at the place, the record fails to indicate it. In order to impress the character of a business homestead on the property, he must have been actually employed in a business there. Shryock & Rowland v. Latimer, 57 Tex. 674.

In the case of Lyon v. Files, 50 Tex. Civ. App. 630, 110 S. W. 999, the appellee had built a rent house on his home property, and obtained judgment for the rent house as his business homestead, but in reversing the judgment the Court of Civil Appeals of the Fifth District held:

"It seems clear that the renting of rooms by appellee was not the pursuit of a calling within the meaning of the Constitution. Nor do we think the renting of rooms in the manner shown by the evidence constituted such a 'business' as the Constitution contemplates in exempting a place for the exercise of his business. The renting of rooms in the manner shown by the evidence does not constitute the exercise of a calling or business within the meaning of the Constitution, and the giving of this charge was error."

[3, 4] The facts in that case were that Files owned a lot on which was situated his home, and, after being absent for 2 years with the intention of returning, he returned, and, his home being occupied by a tenant on a lease which would not expire for six months, Files built a house on the other end of his lot, and lived in it until the six months had expired, when he moved into his home, and rented the new house. He also rented rooms in his old home, and the rents from the new house and the rooms formed the only means of support for him and his family. He claimed the new house as his business homestead, but the appellate court held against him. The facts in that case were much stronger in favor of a homestead than in this, where a spinster daughter buys an adjoining lot to her parents' homestead, takes charge of the house on it, rents the rooms in it, returns it for taxation and exercises all the rights of ownership over it. The lot in controversy was not a part of the old homestead lot, as in the case cited, and could not become a part of the homestead unless it was used as a place of business of H. Hutchenrider, and there is no testimony to sustain any such proposition. Tearing down fences between the two properties and putting an automobile belonging to one or both places in a garage on one of the lots would not indicate a homestead. The place was never used as a place of business by H. Hutchenrider, nor was it a part of his homestead. As said in the cited case of Shryock & Rowland v. Latimer:

"To preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: (1) The head of the family must have a calling or business to which the property is adapted and reasonably necessary. (2) Such property must be used as a place to exercise the calling or business of the head of the family."

No such case is here presented, and no claim of the place being a homestead was ever heard of until it became desirable to defeat the debts due a contractor for labor and material furnished by him.

None of the assignments of error presents error, and each of them is overruled.

The judgment is affirmed.