AURELIO OLIVEROS, Plaintiff and Appellee, *v.* LUISA CANALES, Defendant and Appellant.

No. 4581.   Argued February 7, 1929.—Decided December 20, 1929.

E. H. F. *Dottin,* for appellant.   R. *García Mujica,* for appelle.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

In an action for the recovery of the value of certain pro-

visions the defendant, Luisa Canales, claimed an exemption from execution to the amount of five hundred dollars under the Homestead Law.

The complaint was filed in a municipal court on March 11, 1927, and defendant answered on March 21. There seems to have been some question of fraud in the municipal court where the case was summarily tried and disposed of on affidavits. On the trial *de novo* in the district court the case was submitted and decided on a stipulation which eliminates all question of fraud.

The salient facts so submitted to the consideration of the district court, and considered by it, are: That Luisa Canales is the owner and possessor of one-eighth of a *cuerda* of land (describing it) and of a house standing thereon; that she possesses no other property; that she has lived in the house since February 13, 1927; that her minor grandchildren, Gaspar Febres and Ricardo Kerkadó, live with her; that the said minors receive their food, clothing, medicines and medical attention from their respective fathers, Casimiro Febres and Jesús Kerkadó; that Luisa Canales, on account of her age, also receives her food, clothing and medicine from her sons, Félix Febres and Pablo Febres, who are of age and have families of their own; and that Luisa Canales acquired the property in question by purchase from Guillermina González with the consent of her husband, Casimiro Febres, on March 19, 1926, under deed No. 23, executed before the notary Juan Valdejulli Rodríguez, which instrument is not eligible to record.

The district court held that the facts so agreed upon did not show an estate of homestead, dismissed the claim for an exemption, and rendered judgment for plaintiff.

In 13 R.C.L. 552, section 12 *et seq.*, it is said that—

"While the word 'family' in its origin meant servant or slave, the word has now, however, a more comprehensive meaning, and embraces a collective body of persons living together in one house, under the same management and head, subsisting in common, and directing

their attention to a common object, the promotion of their mutual interests and social happiness . . ." Sec. 12.

"While some cases hold that the debtor must be legally bound to support those about him in order to constitute him the head of a family, ordinarily, a moral duty suffices as a basis of the right . . ." Sec. 13.

. "When one person controls, supervises, and manages the affairs about a house, such person is in the largest sense the head of the family, and all who reside in the house are members of the family, but in order to constitute one the head of a family within the meaning of the homestead law there must be a state of dependence in law or in fact upon such person on the part of some of those who constitute the family. As already seen, however, it is not generally held necessary that there should be any blood relationship between one claiming to be the head of a family and the members thereof, or that there should be any legal obligation on the part of one claiming to be the head of a family to support the members thereof, a moral duty to support being deemed sufficient . . ." Sec. 16.

"The word 'householder' has been defined to be the head, master, or person who has charge of and provides for a family, and does not apply to the subordinate members or inmates of the household. While in some jurisdictions, in applying the constitutional and statutory provisions relating to homesteads the term 'household' is regarded as being very nearly if not quite synonymous with the phrase 'head of a family', in others a distinction is made in the ordinary import of the terms. Accordingly, it has been decided that a statutory expression that every householder having a family is entitled to a homestead exemption does not require such householder to be the head of a family. Even under statutes expressly providing that every householder in the state, being the head of a family, shall be entitled to a homestead, it has been held that a wife has the character of the head of the family, while occupying with her husband her property as a home, so as to enable her to designate and affect it with the character of a homestead, and thus exempt it from seizure and sale for the joint debt of herself and husband, and that when a conveyance to the wife is made by the husband for the purpose of placing the home beyond the reach of his creditors, the wife is not precluded from claiming the benefit of the homestead statute, even as against such creditors . . " Sec. 19.

"A grandfather or grandmother having a grandchild depending upon him or her for support is held to be the head of a family within

the meaning of the term as used in homestead laws, and a grandfather supporting his grandchild, and having a son who was absent at work, has been held not to have lost his homestead right by the death of such grandchild. . . .'' Sec. 21.

In 29 C. J. 795, 798, sections 36 and 37, we find that—

''Where the statutory designation of the person entitled to claim a homestead is 'a head of a family,', a 'householder', a 'housekeeper,' a 'householder having a family,' or a 'housekeeper with a family,' as the case may be, there must exist a 'family,' within the meaning of the term in the homestead provisions, toward which the person claiming the exemption must sustain the relation of the head, the householder, or the housekeeper; and generally a single person without any other person dependent upon him for support cannot be the head of a family. To constitute a person a head of a family or a householder or a housekeeper, within the meaning of the homestead provisions, it is not necessary that he or she should be a husband, wife, or parent. Where the relation of husband and wife or parent and child does not exist, it is said that the relation should be one in which a continuing personal authority and obligation rests on one for the welfare of the others who in law should or in fact do recognize him as the head of the family. . . .''

''A householder or housekeeper has been defined as the head of a household, who keeps house with his family; the head of a family which he is obliged to support. While the ordinary meaning of 'householder' is that such person is the head of a family, on whom the other members are dependent, and hence usually does not embrace subordinate inmates of the family, it has been held that the term 'householder having a family' does not necessarily require a householder to be the head of a family and that the exemption is given to a married woman in her separate property when occupied as a homestead by herself and her husband and children. If the householder has no family, he is of course not a 'householder having a family'; and it has been held that this is so even where the term used in the statute is merely 'householder.' Furthermore to be entitled to a homestead under a statute allowing a homestead to a 'housekeeper with a family,' it is clear that a person must keep house in the state. Under the proper circumstances a householder or a housekeeper may include a husband, a wife, a widow, a widower, a parent, an unmarried person, or a guardian. . . .'' Sec. 36.

''While there is some contrary authority in order to constitute

one a head of a family, or a householder or housekeeper with or having a family, within the homestead provisions, there must be a condition of dependence on the part of the other members on him, and either a legal or a moral obligation on his part to support them, and a mere aggregation of persons living together under one head is not enough, although it is not necessary for them to receive all of their support from the debtor. If the persons living with the debtor receive no support from him they are not 'dependents'. There must be a state of at least partial dependence of the other members for their support. Persons who are able to earn a living are not dependents within the rule; but it is otherwise as to infant children who do not own property sufficient to maintain them although they work and partly earn their own living. A person who keeps a boarding house is not the head of a family, where there are no other persons besides the boarders, that is, no other persons dependent upon him or her for support.

"In a few cases it has been held, or said that there must be a legal obligation to support on the part of a person to constitute him the head of a family, as in the case of the relation of husband and wife of parent and child; but the weight of authority is in favor of the rule that a mere moral or natural obligation to support and a condition of dependence and actual support are sufficient," Id. 796.

Section 212 and section 213, in part, of the Civil Code read as follows:

"Sec. 212. Support is understood to be all that is indispensable for maintenance, housing, clothing and medical attention, according to the social position of the family.

"Support also includes the education and instruction of the person supported when he is a minor.

"Sec. 213. The following are obliged to support each other, within the full meaning of the preceding section:

"1. Husband and wife.

"2. Legitimate ascendants and descendants. . . ."

Section 1 of "An Act to define homestead and to exempt it from forced sale," approved March 12, 1903, Comp. St. 1911, sec. 1000, provides:

"That every householder, having a family, shall be entitled to an estate of homestead to the extent and value of five hundred dollars in a farm, plantation or lot of land, and buildings thereon, owned,

or lawfully possessed, by lease or otherwise, and occupied by him or her as a residence, and such homestead and all right and title therein, shall be exempt from attachment, judgment, levy or execution, except for the taxes due thereon, or purchase price of said property, or liability incurred for the improvements placed thereon, and except as hereinafter prescribed: . . ."

We shall not attempt at this time, without the aid of counsel, an exhaustive examination of cases decided under the various statutes in other jurisdictions.

In *National Bank* v. *Cruger,* 31 Tex. Civ. App. 17, 24, the court, speaking through Judge Key, said:

"Counsel for appellant contends that as the testimony shows that the nephews and nieces alleged to constitute the family of Miss Fannie Cruger were the owners of a valuable farm, therefore, they were not dependent upon her for support; and consequently she was not the head of a family; and the case of Roco v. Green, 50 Tex, 490, is relied on in support of that contention. In that case the court said:

" 'We deduce from the authorities the following general rules to determine when the relation of a family, as contemplated by law, exists: 1. It is one of social status, not of mere contract. 2. Legal or moral obligation on the head to support the other members. 3. Corresponding state of dependence on the part of the other members for this support. Thomp. on H. and E., sections 45, 46, and authorities cited.'

"Notwithstanding the test there prescribed, in the subsequent case of Wolfe v. Buckley, 52 Texas, 649, the same court in an opinion prepared by the same judge, considered, as a factor in determining the question of homestead, the fact that the minor children were dependent upon Mrs. Buckley for moral training, as well as for partial support and maintenance. Of course, Miss Fannie Cruger originally was under no legal obligation to support and maintain or nurture her nephews and nieces; but having taken them from their former home twenty years before the controversy in this case arose, and having undertaken to rear, train and nurture them, and having contributed largely to their support and maintenance, undoubtedly, there rested upon her a moral obligation to continue so to do, as long as they were in a state of dependence; and the word dependence, as here used, is not restricted to support and maintenance—food and clothing. It is intended to include moral and mental training, and that care and nurture which would be prompted by the feelings of affection which

the testimony indicates existed between the aunt and the children of her unfortunate sister.''

See also *First National Bank* v. *Sokolski,* 131 S. W. 818.

In *Zander* v. *Scott et al.,* 46 N. E. 2, 3, the Supreme Court of Illinois, construing a statute which is the prototype of our own, said:

''We see no reason why a wife, though living with her husband, may not be considered a householder under this provision. The statute does not make it necessary that the party claiming the exemption should be the head of a family. It is sufficient that he or she be a 'householder having a family.' ''

In *Carle* v. *Bamberger,* 158 Pac. 599, Edmonia H. Dautell, a widow, upon acquisition of the property claimed by her as a homestead, ''took to live with her an unmarried son, 26 years old, who supported himself and contributed to the support of his mother, an invalid daughter and her child, to whose support she contributed, and the husband of the daughter, an impecunious clerk, who also contributed to the support of his invalid wife and child.''

In disposing of the question as to whether or not the property so occupied was the homestead of a ''family'', the Oklahoma court said:

''. . . Independent of the relation of the married daughter, her child, and her husband to the others of the group, we think the relation existing between Edmonia and her unmarried son was sufficient to constitute those two a family within the contemplation of the statute. This for the reason that pursuant to a moral obligation between them she contributed to his support with the shelter of her roof, and he contributed to her support from his wages.''

Our Homestead Law does not define the word ''family''. It does not say that ''a householder having a family,'' in order to be entitled to an estate of homestead, must provide for that family ''all that is indispensable for maintenance, housing, clothing and medical attention, according to the social position of the family.'' It does not speak of a householder having a family dependent upon him or her for main-

tenance, clothing and medical attention. The element of housing is included of course in the requirement as to occupancy of the homestead as a residence. Some element of dependence upon the householder is necessary no doubt in order to show an interest on the part of the member, or the members of the family, in the preservation of the homestead. In some instances (as for example in the case of a bachelor or spinster who takes a child or children or shares the home with an adult or adults, not related to the householder by any tie of blood or marriage), the question of dependence for support may become an important and decisive factor in the situation. The interest of a member of a household in preserving the homestead need not, however, be wholly mercenary. In the case of a grandmother it is enough that the grandchildren who live with her are dependent upon her, not only for lodging, but also for that home training and for those intangible comforts of home life which only a mother or a grandmother can provide. In the case at bar these essential requirements are fully met.

It is a significant fact that plaintiff herein seeks to recover an amount alleged to be due for provisions purchased by the grandmother. Thus it appears that the grandmother, before occupying the premises now claimed as the homestead, was providing for herself or for others or for herself and others. The mere circumstance that she has since become dependent upon her children for her clothing and food supply and that the clothing and food for the grandchildren are now derived from the same source does not justify the conclusion that she is not "a householder having a family" within the meaning of our Homestead Law.

The judgment appealed from must be reversed in so far as the dismissal of defendant's claim to exemption to the extent of five hundred dollars is concerned, modified accordingly in other respects, and, as modified, affirmed.

MR. JUSTICE TEXIDOR, dissenting.

I dissent, because in my opinion Luisa Canales can not be considered as a "householder, having a family," which is the status required by our law in order to be entitled to an estate of homestead.

Luisa Canales is supported by her sons Félix Febres and Pablo Febres, who provide her with maintenance, clothing and medicines. She lives with her two minor grandchildren, who are not under her *patria potestas,* because their respective fathers, who support them, are living, and in them reside the rights and obligations of such *patria potestas.* It can not be said that the companionship of such grandchildren makes of her a householder having a family. From the strictly legal standpoint she does not have such status; nor according to natural law, or in an economic sense.

I favor the interpretation which requires that, before a person can be considered as a householder for the purposes of the Homestead Law, there must exist a state of dependency on the part of those constituting a family with respect to such person.

In my view, the judgment appealed from should be affirmed. I am authorized to state that Mr. Justice Aldrey concurs in this opinion.