AURELIO OLIVEROS, demandante y apelado, *v.* LUISA CANALES, demandada y apelante.

No. 4581.—*Sometido:* Febrero 7, 1929. *Resuelto:* Diciembre 20, 1929.

E. H. F. Dottin, abogado de la apelante; · R. García Mujica, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

En una acción sobre cobro del valor de ciertas provisiones, la demandada Luisa Canales solicitó se le eximieran de ejecución bienes hasta la suma de $500, de acuerdo con la Ley del Hogar Seguro.

La demanda fué radicada en una corte municipal en marzo 11, 1927, y la demandada contestó el 21 del mismo mes. Parece que en la corte municipal se suscitó alguna cuestión respecto a fraude, siendo el caso sumariamente juzgado y

resuelto mediante *affidavits*. En el juicio *de novo* celebrado ante la corte de distrito, el caso fué sometido y resuelto en virtud de una estipulación eliminando todo lo relativo a fraude.

Los hechos sobresalientes así sometidos a la consideración de la corte de distrito y considerados por ésta, son: que Luisa Canales es dueña y poseedora de la octava parte de una cuerda de terreno, que se describe, así como de una casa enclavada en la misma; que no posee otros bienes; que ha vivido en esa casa desde febrero 13, 1927; que vive en compañía de sus nietos, menores de edad, llamados Gaspar Febres y Ricardo Kerkadó; que dichos menores reciben su alimentación, medicinas, vestuario y asistencia médica de sus padres respectivos, Casimiro Febres y Jesús Kerkadó; que, por su edad, Luisa Canales también recibe su alimentación, vestuario y medicinas de sus hijos Félix Febres y Pablo Febres, quienes son mayores de edad y tienen constituídos sus respectivos hogares, y que Luisa Canales adquirió el inmueble antes descrito por compra a doña Guillermina González, previo consentimiento de su esposo, Casimiro Febres, el 19 de marzo de 1926, según escritura pública No. 23, otorgada ante el notario Juan Valldejulli Rodríguez, documento que no es inscribible.

La corte de distrito resolvió que los hechos así convenidos no revelaban un estado de hogar seguro, desestimó la solicitud de exención, y dictó sentencia a favor del demandante.

En 13 R.C.L. 558, sección 12, *et seq.*, se dice que:

"Si bien la palabra 'familia' originalmente significaba sirviente o esclavo, esa palabra tiene ahora un significado más comprensivo, y abarca un cuerpo colectivo de personas que viven en una casa bajo la misma administración y jefatura, subsistiendo en común, y dirigiendo su atención a un objeto común, o sea, la promoción de sus intereses mutuos y de su felicidad social . . . "

"Aunque algunos casos sostienen que el deudor debe estar legalmente obligado a sostener aquellas personas que le rodean para que

pueda constituir un jefe de familia, ordinariamente un deber moral basta para servir de base a tal derecho . . . '' Id., sección 13.

''Cuando una persona tiene el dominio y la superintendencia de una casa y dirige sus asuntos, tal persona es cabeza de familia en el sentido más amplio, y todos los que residen en la casa son miembros de la familia; pero a fin de que una persona se constituya en cabeza de familia dentro del significado de una ley sobre hogar seguro, debe haber cierto estado de dependencia en esa persona por ley o a virtud de los hechos, de parte de los que constituyen la familia. Empero, como ya hemos visto, generalmente se ha resuelto que no es necesario que haya relación alguna de consanguinidad entre la persona que alega ser cabeza de familia y los miembros de la misma, considerándose como suficiente la existencia del deber moral de mantenerlos . . . '' Id., sección 16.

''Las palabras 'jefe de familia' han sido definidas como la cabeza, el dueño o la persona que está a cargo de una familia y que la mantiene, y no es aplicable a los miembros subordinados o a los residentes de la casa. Si bien en algunas jurisdicciones, al aplicar las disposiciones constitucionales y estatutorias relativas al derecho del hogar seguro, la palabra *household* es considerada como muy similar a la frase 'cabeza de familia'—de no ser casi sinónima de la misma—en otras se hace una distinción entre la acepción ordinaria de esos términos. Así, se ha resuelto que la disposición estatutoria de que a todo jefe de familia, que tenga familia, le asiste el derecho de exención por concepto de hogar seguro, no exige que tal jefe de familia no sea la cabeza de la familia. Aun bajo estatutos que expresamente disponen que todo jefe de familia en el estado, que sea padre de familia, tiene derecho al hogar seguro, se ha resuelto que una esposa participa del carácter de jefe de familia mientras ocupa, con su esposo, su propiedad como hogar, y se le permite designarla y afectarla como un hogar seguro, eximiéndola así de embargo y venta por la deuda mancomunada de ambos cónyuges, y que cuando el esposo hace un traspaso a su mujer con el fin de colocar al hogar fuera del alcance de sus acreedores, la esposa no está impedida de alegar el beneficio del estatuto concediendo el hogar seguro, aun contra tales acreedores . . . '' Id., sección 19.

''Se ha resuelto que un abuelo o abuela que tiene un nieto que dependa de él o ella para su sostén es cabeza de familia, dentro del significado de este término tal como se usa en las leyes sobre hogar seguro, y que un abuelo que tiene un nieto, y un hijo que trabaja fuera, no ha perdido su derecho al hogar seguro con la muerte del nieto . . . '' Id., sección 21.

En 29 C. J. 795, 798, secciones 36 y 37, hallamos lo siguiente:

"Cuando el estatuto designa a la persona con derecho a reclamar el hogar seguro como 'cabeza de familia,' 'jefe de familia,' 'amo de casa,' 'jefe de familia que tenga familia,' o 'amo de casa con familia,' según sea el caso, debe existir una 'familia,' dentro del significado de ese término en los preceptos relativos al hogar seguro, para con la cual la persona que alega la exención debe sostener la relación de cabeza de familia, de jefe de familia, o de amo de casa; y generalmente una sola persona, sin que nadie dependa de ella para su sostén, no puede ser cabeza de familia. Para que una persona sea cabeza de familia, jefe de familia, o ama de casa, dentro del significado de las disposiciones sobre el hogar seguro, no es necesario que sea el esposo, la esposa, el padre o la madre. Cuando la relación existe, se dice que la misma debe ser una en que la autoridad personal sea continua y en que recaiga sobre la persona la obligación de velar por el bienestar de otros, quienes en ley deben reconocerla, y en realidad la reconocen como la cabeza de la familia.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Un jefe de familia o amo de casa ha sido definido como la cabeza de la familia, aquél que sostiene una casa con su familia; la cabeza de la familia que está obligado a sostener. Si bien el significado corriente de las palabras 'jefe de familia' es que esa person es la cabeza de la familia de quien dependen los demás miembros de la misma, y, por tanto, generalmente no abarca los miembros subordinados de la familia, se ha resuelto que la frase 'amo de casa que tiene familia' no exige, necesariamente, que el amo de casa sea la cabeza de la familia, y que existe la exención a favor de una mujer casada que tiene bienes privativos que ocupa con su esposo e hijos. Desde luego, si el dueño de la casa no tiene familia, no es un 'jefe de familia con familia'; y se ha resuelto que esto es así aun cuando la frase que se use en el estatuto sea meramente 'amo de casa.' Además, para que una persona tenga derecho al hogar seguro bajo un estatuto que lo concede a un 'amo de casa que tenga familia,' es claro que tal persona debe tener su hogar dentro del estado. Bajo circunstancias adecuadas, un dueño o amo de casa puede incluir a un marido, una esposa, una viuda, un viudo, un padre o una madre, una persona soltera, un tutor, o una tutora.

"Si bien hay algunas autoridades que resuelven lo contrario, para que una persona se constituya en cabeza de familia, en dueña o ama de casa, con familia dentro de las disposiciones de la ley sobre el

hogar seguro, debe mediar cierta condición de dependencia por parte de los otros miembros de la familia para con ella, y la obligación legal o moral suya de sostenerlos; y una simple congregación de personas que viven juntas bajo el mismo jefe no es suficiente, aunque no es necesario que ellas reciban toda su manutención del deudor. Si las personas que viven con el deudor no reciben manutención alguna de él, entonces no dependen de él. Los otros miembros deben hallarse por lo menos en un estado de dependencia parcial para su sostenimiento. Las personas habilitadas para ganarse la vida no dependen de otras, dentro del significado de la regla; mas sucede lo contrario en lo que respecta a niños que no poseen bienes suficientes para su sostenimiento, aunque trabajen y ganen parte de su propia subsistencia. Una persona que explota una casa de huéspedes no es cabeza de familia cuando no hay en la casa otras personas en adición a los huéspedes, es decir, cuando no hay otras personas que dependan de ella para su sostenimiento.

"En unos pocos de casos se ha resuelto que debe existir la obligación legal de sostener a alguien por parte de una persona, para que se constituya en cabeza de familia, como cuando se trata de la relación de marido y mujer, o padre e hijo; pero el peso de las autoridades está en favor de la regla de que una mera obligación moral o natural de sostener a alguien, y el estado de dependencia y de sostenimiento son suficientes."

El artículo 212 y el 213, en parte del Código Civil leen como sigue:

"Artículo 212. Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.

"Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad.

"Artículo 213. Están obligados recíprocamente a darse alimentos, en toda la extensión que señala el artículo precedente:

"1. Los cónyuges.

"2. Los ascendientes y descendientes legítimos . . ."

La sección primera de la "Ley para definir el *homestead* (hogar seguro) y para exentarlo de una venta forzosa", aprobada el 12 de marzo de 1903—Estatutos Revisados de 1911, sección 1000—dispone:

"Que todo jefe de familia, que tenga familia, tendrá derecho a

una finca de *homestead*, hasta el valor de quinientos dollars (500) en una estancia, plantación o predio de terreno y en los edificios contenidos en el mismo, que le pertenezca o que posea legalmente, en virtud de arrendamiento en otra forma, y estuviere ocupado por él o ella como su residencia; y dicho *homestead* y todo derecho o título 'sobre el mismo estará exento de embargo, sentencia, exacción o ejecución, excepción hecha de las contribuciones que adeudare, el valor de la venta (compra) de dicha propiedad o la responsabilidad incurrida por mejoras que se hicieren en la misma, y excepción hecha también de lo que más adelante se establece . . . ''

No trataremos por ahora, sin la ayuda de los letrados, de hacer un examen minucioso de los casos resueltos de conformidad con los distintos estatutos vigentes en otras jurisdicciones.

En el caso de *National Bank* v. *Cruger*, 31 Tex. Civ. A. 17, 24, el tribunal, por voz del Juez Asociado Sr. Key, dijo:

''El abogado del apelante sostiene que como la prueba demuestra que los sobrinos que se alega constituyen la familia de la Srta. Fannie Cruger eran dueños de una hacienda valiosa, y por tanto, no dependían de ella para su sostén, ella no era cabeza de familia; y para esa contención se descansa en el caso de Roco v. Green, 50 Texas 450. En ese caso la corte dijo:

'' 'Inferimos de las autoridades las siguientes reglas generales para determinar cuándo existe la relación de familia que prevé la ley: 1. Es una de carácter social, no meramente contractual. 2. La obligación legal o moral por parte del jefe de la familia de mantener los demás miembros. 3. El correspondiente estado de dependencia por parte de los otros miembros para su manutención. Thomp. on H. & E., secs. 45, 46, y las autoridades citadas.'

''No obstante la norma allí prescrita, en el caso posterior de Wolfe v. Buckley, 52 Texas 649, la misma corte, en una opinión confeccionada por el mismo juez, consideró como un factor para determinar la cuestión del hogar seguro el hecho de que los hijos menores de edad dependieran de la Sra. Buckley para su educación moral, así como para su sostenimiento y manutención parcial. Desde luego, la Srta. Fannie Cruger originalmente no tenía obligación legal alguna de sostener y mantener o alimentar a sus sobrinos; pero habiéndolos sacado del hogar que tenían veinte años antes de surgir la presente contienda, y habiéndose propuesto criarlos, educarlos y

alimentarlos, contribuyendo grandemente a su sostenimiento y manutención, indudablemente recae sobre ella la obligación moral de continuar haciéndolo así mientras ellos permanezcan en un estado de depedencia; y la palabra 'dependencia,' según aquí se usa, no está limitada al sostenimiento y manutención—comida y vestuario. La intención es incluir la enseñanza moral e intelectual, así como el cuidado y la nutrición provocados por los sentimientos de afecto que la prueba indicó existían entre la tía y los hijos de su infortunada hermana.''

Véase además *First National Bank* v. *Sokolski*, 131. S.W. 818.

En el caso de *Zander* v. *Scott et al.,* 46 N.E. 2, 3, la Corte Suprema de Illinois, al interpretar un estatuto que es el prototipo del nuestro, dijo:

''No vemos razón alguna por la cual una esposa, aunque viva con su marido, no pueda considerarse como la dueña de casa bajo esta disposición. A tenor del estatuto, no es necesario que la persona que recaba la exención sea la cabeza de la familia. Basta que él o ella sean 'dueños de casa con familia'.''

En el caso de *Carle* v. *Bamberger,* 158 Pac. 599, Edmonia H. Dautell, una viuda, al adquirir la propiedad reclamada por ella como hogar seguro, se llevó consigo, para que vivieran en su compañía, a su hijo soltero de 26 años de edad, quien se sostenía a sí mismo y contribuía además al sostenimiento de su madre; a una hija inválida, y al niño de ésta, a cuyo sostenimiento la hija contribuía; y al marido de la hija, quien era un oficinista insolvente y contribuía también a sostener su esposa inválida y su niño.

Al resolver la cuestión respecto a si la propiedad así ocupada constituía el hogar seguro de una familia, el tribunal de Oklahoma dijo:

'' . . . Irrespectivamente de la relación que existía entre la hija casada, su niño y el esposo para con los otros que constituían el grupo, creemos que la relación existente entre Edmonia y su hijo soltero era suficiente para constituirlos a ellos dos en una familia dentro de los preceptos del estatuto. Esto es así debido a que, de conformidad con la obligación moral existente entre ellos, ella con-

tribuía al sostén de él dándole albergue bajo el techo de su hogar, y él con su salario contribuía al mantenimiento de ella.''

Nuestra ley de hogar seguro no define la palabra ''familia''. No dice que para que a un ''jefe de familia, que tenga familia'' le asista el derecho a reclamar el hogar seguro sobre determinada propiedad, debe proveer a esa familia de ''todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.'' No habla de un jefe de familia que tenga una familia que dependa de él o ella para su sustento, vestido y asistencia médica. El elemento de habitación está incluído, desde luego, en el requisito relativo a la ocupación del hogar seguro como residencia. Sin duda alguna, se necesita algún elemento de dependencia sobre el jefe de la familia para que pueda demostrarse algún interés de parte del miembro o miembros de la familia en la conservación del hogar seguro. En algunos casos (como por ejemplo cuando se trata de un hombre o una mujer célibes que se hacen cargo de uno o varios menores, o que comparten su hogar con uno o más adultos, no emparentados con el jefe de la familia por nexo alguno de consanguinidad o afinidad) la cuestión de dependencia para el sostenimiento puede llegar a ser un factor importante y decisivo de la situación. Sin embargo, el interés que pueda tener uno de los miembros de la casa en la conservación del hogar seguro no tiene necesariamente que ser del todo mercenario. Tratándose de una abuela, basta que los niños que viven en su compañía dependan de ella no sólo para su alojamiento, sino también para la educación propia del hogar y para aquellas comodidades intangibles que ofrece la vida hogareña y que sólo una madre o una abuela pueden proporcionar.

En el presente caso estos requisitos esenciales se han cumplido plenamente.

Es un hecho significativo que el demandante en este caso trata de recobrar una cantidad que alega se le adeuda por

concepto de provisiones compradas por la abuela. De suerte que aparece que la abuela, antes de ocupar la casa que ahora reclama como su hogar seguro se sostenía a sí misma o a otros, o a sí misma y a otros. La mera circunstancia de que desde entonces haya dependido de sus hijos para su vestuario y sustento, y que la ropa y alimentación de los nietos provengan ahora de la misma fuente, no justifica la conclusión de que ella no es "jefe de familia, que tenga familia", dentro del significado de la ley del hogar seguro.

*Debe revocarse la sentencia apelada en cuanto a la negativa de la solicitud de exención hasta quiniéntos dólares hecha por la demandada, modificándose de conformidad respecto a otros particulares, y así modificada, se confirma.*

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR TEXIDOR, CON LA CUAL ESTÁ CONFORME EL JUEZ ASOCIADO SEÑOR ALDREY

Disiento de la opinión, porque entiendo que Luisa Canales no puede ser tenida en el concepto de "jefe de familia, que tenga familia", requerida por nuestro estatuto para tener derecho al *homestead*.

Luisa Canales vive sostenida por sus hijos Félix Febres y Pablo Febres, que proveen a su manutención, vestidos y medicinas. Ella vive con dos de sus nietos menores que no se hallan bajo su potestad por tener padres en quienes residen los deberes y derechos de la patria potestad, y quienes atienden a la subsistencia de dichos menores; no puede decirse que la compañía de esos nietos la constituya en jefe de familia que tenga familia. Civilmente ella no tiene ese carácter, ni lo tiene conforme al derecho natural, ni en el sentido económico.

Estoy de acuerdo con la interpretación que requiere que a fin de que una persona se constituya en jefe de familia a los efectos de la ley de hogar seguro, debe existir un estado de dependencia de parte de los que constituyen la familia, con respecto a esa persona.

Opino que la sentencia apelada debe ser confirmada. Es-

toy autorizado para consignar que el Juez Asociado Señor Aldrey está conforme con esta opinión.